# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRAGAN VASIC,<br><br>        Plaintiff,<br><br> v.<br><br>PATENTHEALTH, L.L.C., *et al.*,<br><br>        Defendants. | Case No. 13-cv-849-BAS(MDD)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>**[Doc. No. 41]** |

  On April 8, 2013, Plaintiff Dragan Vasic commenced this class action arising out of the advertising and sales of a glucosamine-based health supplement. Thereafter, Plaintiff filed a First Amended Complaint against Defendants PatentHEALTH, L.L.C., Arthur Middleton Capital Holdings, Inc. ("Arthur Middleton"), and Walgreen, Co., alleging violations of California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). PatentHEALTH and Arthur Middleton (collectively, "Defendants") now move to dismiss Plaintiff's Second Amended Complaint ("SAC") under Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

The Court finds this motion suitable for determination on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiff alleges in the SAC that he "was exposed to and saw Defendants' representations regarding the joint-health benefits of Trigosamine Max Strength by reading the product label in a Walgreen's store near his home in San Diego, California" in November 2012.[1] (SAC ¶ 13.) According to Plaintiff, "[i]n reliance on the claims listed on the product label . . . and specifically those claims listed on the front of the product label, that Trigosamine Max Strength would 'lubricate' joints, 'relieve' pain, and 'build' cartilage, [he] purchased the Trigosamine Max Strength product" for approximately $25.00. (Id.) At the time, Plaintiff was "experiencing pain and stiffness in his joints following his regular workouts," and he "purchased the product believing it would provide the advertised joint-health benefits and improve his joint soreness and comfort." (Id.) Plaintiff contends that the Trigosamine product did not provide the stated benefits. (Id.)

Plaintiff also alleges that "Defendants manufacture, distribute, and sell the Trigosamine line of dietary supplements," which include (1) Trigosamine Max Strength, and (2) Trigosamine Fast-Acting. (SAC ¶ 20.) He adds that since the products' launch, "Defendants have consistently conveyed the message to consumers throughout California that the Trigosamine products will relieve joint pain, lubricate joints, and rebuild joint cartilage." (Id. ¶ 22.) The basis of this action is Plaintiff's contention that Defendants' advertised claims "are not substantiated by competent, scientific evidence and are factually baseless." (Id.) Plaintiff cites numerous studies in his SAC to support his position. (Id. ¶¶ 28–49.)

Plaintiff additionally alleges in the SAC that there is a unity of interest and

---

[1] On December 10, 2013, Plaintiff voluntarily dismissed his claims against Walgreen.

ownership between Defendants such that Arthur Middleton is the alter ego of PatentHEALTH. In the SAC, he describes PatentHEALTH as "a limited liability company established under the laws of the state of Ohio," with its corporate headquarters located at 8000 Freedom Avenue NW, North Canton, Ohio 44720, which "manufactures, distributes, markets, and sells Trigosamine products." (SAC ¶ 14.) Arthur Middleton is similarly described as an Ohio corporation with its corporate headquarters at the same aforementioned address in North Canton, Ohio, which also "manufactures, distributes, markets, and sells the Trigosamine products." (*Id.* ¶ 15.) Plaintiff alleges that PatentHEALTH is a wholly owned subsidiary of Arther Middleton, and Arthur Middleton is the sole member of PatentHEALTH. (*Id.* ¶¶ 14–15.) He adds that "both Defendants share the same president, treasurer, and incorporator; both Defendants share the same agent for service of process; and both Defendants are represented by the same litigation defense counsel in the present matter." (*Id.* ¶ 17.)

Finally, Plaintiff asserts that "Arthur Middleton's involvement in the management and operation of PatentHEALTH extends beyond its investor status" because "PatentHEALTH's stakeholders have not adequately capitalized it to cover prospective liabilities." (SAC ¶ 18.) To support that assertion, Plaintiff alleges that "the Cuyahoga County Common Pleas Court in Ohio appointed a receiver for the business operations and property of PatentHEALTH" and "public records demonstrate that an outstanding loan in the amount of nearly $3.35 million made from PatentHEALTH to Arthur Middleton remained unpaid by Arthur Middleton at the time the court-appointed receiver filed her inventory of PatentHEALTH's property and assets."[2] (*Id.*)

On April 8, 2013, Plaintiff commenced this class action. Thereafter, he amended his complaint twice. In his SAC, Plaintiff asserts two claims for: (1) violation of the

---

[2] There are no allegations in the SAC that explain what precipitated the appointment of the receiver.

CLRA, California Civil Code §§ 1750, *et seq.*, and (2) violation of California Business and Professions Code §§ 17200, *et seq.* Defendants now move to dismiss the SAC under Rules 9(b), 12(b)(1), and 12(b)(6). Plaintiff opposes.

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir.2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## III. DISCUSSION[3]

### A. Alter Ego

Defendants move to dismiss the SAC arguing it fails to state sufficient facts supporting the theory that Arthur Middleton is the alter ego of PatentHEALTH.

"The equitable alter ego doctrine governs whether two separate entities may be treated as the same entity." *Sandoval v. Ali*, — F. Supp. 2d —, 2014 WL 1311776, at *4 (N.D. Cal. 2014) (citing *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545-46

---

[3] Both parties submit exhibits with their respective briefs. However, in evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios*, 896 F.2d at 1555 n.19. The Court may also take judicial notice of certain items under Federal Rule of Evidence 201 without converting the motion to dismiss into one for summary judgment. *Barron*, 13 F.3d at 1377. Both parties fail to show that their respective exhibits are properly before this Court for the purposes of Defendants' motion to dismiss. Therefore, the exhibits will not be considered in assessing the merits of the parties' arguments.

(9th Cir. 1985). The doctrine applies where "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *RRX Indus.*, 772 F.2d at 545-46 (citing *Automotriz Del Golfo De Cal. S.A. De C.V. v. Resnick*, 47 Cal. 2d 792, 796 (1957)); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). "In assessing alter ego, courts consider the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Sandoval*, 2014 WL 1311776, at *4. "Common ownership alone is insufficient to disregard the corporate form." *Id.* Lastly, "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). "Rather, a plaintiff must allege specifically both the elements of alter ego liability, as well as facts supporting each." *Id.*

Despite Defendants' arguments to the contrary, Plaintiff alleges facts beyond mere common ownership. For example, he alleges various details that are pertinent to assessing alter ego: (1) Defendants use the same headquarter address and share the "same president, treasurer, and incorporator"; (2) PatentHEALTH is a wholly owned subsidiary of Arthur Middleton, and Arthur Middleton is the sole member of PatentHEALTH; (3) Defendants share the same agent for service of process; and (4) PatentHEALTH made a loan to Arthur Middleton in the amount of $3.35 million that remains unpaid. (*See* SAC ¶¶ 14–18.) Each of these facts relate to the considerations required in assessing alter ego. *See Sandoval*, 2014 WL 1311776, at *4.

In *Sandoval*, the plaintiffs alleged "on information and belief" that certain individual defendants were alter egos of the corporate defendants. *Sandoval*, 2014 WL 1311776, at *5. The allegations included that the corporate defendants were

underfunded, not stand-alone corporations, had common management and pay practices, shared labor and materials (including a distribution and billing system), and operated a common market system. *Id.* The district court criticized the plaintiffs' allegations about the unity of interest as being conclusory. *Id.* In contrast, Plaintiff in this case alleges specific facts regarding the nature of the relationship between PatentHEALTH and Arthur Middleton in addition to a specific example—i.e., the $3.35 million unpaid loan—of an instance where the Court may reasonably infer that use of one defendant may have been a mere shell or conduit for the affairs of the other, or there may have been inadequate capitalization, disregard of corporate formalities, or lack of segregation of corporate records. *See id.* at *4. Thus, the Court cannot conclude that Plaintiff's allegations are nothing more than conclusory regarding Defendants' alter-ego status. *See id.*

Furthermore, in *Daewoo Electronics America, Inc. v. Opta Corporation*, No. C 13-1247, 2013 WL 3877596, at *2 (N.D. Cal. July 25, 2013), the district court found that the plaintiff's allegations that the defendant was "a mere instrumentality, agency, conduit, or adjunct of [the defendant]" and "directed and controlled [an affiliated entity's] dealings" was adequate to "properly allege a unity of interest." The court concluded that those two allegations alone were enough to satisfy the first prong of the alter-ego doctrine. *Id.* Again, the facts that Plaintiff provides are more detailed and voluminous than those provided in *Daewoo Electronics*. *See id.* There are allegations of specific facts describing the relationship between Defendants—e.g., sharing the same corporate headquarters and personnel—as well as an example of a specific incident where a large sum of money was transferred from one defendant to another, among other things. Consequently, Defendants fail to demonstrate that Plaintiff does not adequately allege alter ego.

In sum, Defendants fail to show that it is facially implausible to draw the reasonable inference that Arthur Middleton and PatentHEALTH are alter egos of each other based on the facts that Plaintiff alleges in his SAC. *See Iqbal*, 556 U.S. at 678.

Therefore, the Court cannot conclude at this time that dismissal as a result of the alter-ego doctrine is appropriate.

### B.      Federal Rule of Civil Procedure 9(b)

Defendants argue that Plaintiff's "conclusory allegations do not differentiate the conduct of the two Defendants, and establish how, who, where, and when each of the Defendants contributed to the alleged fraudulent conduct," and that Plaintiff "fail[s] to state any facts alleging any discrete conduct on the part of either Defendant other than to allege that they both 'manufacture, distribute, market and sell products.'" (Defs.' Mot. 7:7–8:11; *see also* Defs.' Reply 2:6–11.) Citing paragraphs 13 to 19 of the SAC, Plaintiff responds by arguing that he "has satisfied Rule 9(b) by alleging the time, place, and content of the false representations, the identifies of the parties, and the alter ego relationship between Defendants." (Pl.'s Opp'n 3:2–9.)

When a claim is "grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). To satisfy the particularity requirement of Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (9th Cir.2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)). Plaintiffs must plead enough facts to give defendants notice of the time, place, and nature of the alleged fraud together with an explanation of the statement and why it was false or misleading. *See id.* at 1107. Averments of fraud must be pled with sufficient particularity as to give the defendants notice of the circumstances surrounding an allegedly fraudulent statement. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir.1994) (superceded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir.2001)). The circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the

charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)) (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In this case, Plaintiff alleges that Defendants falsely represented the Trigosamine product to provide certain benefits—joint lubrication, pain relief, and cartilage building—on the product label in November 2012 in a Walgreen store near his home in San Diego. (SAC ¶¶ 11, 21–25.) He cites numerous studies to support his contention that "Defendants knew or should have known that glucosamine alone or taken in combination with the other ingredients present in Trigosamine has no actual medicinal value and does not provide any of the warranted benefits as represented by Defendants' Trigosamine products' packaging, labeling, and other advertising." (*Id.* ¶¶ 27, 28–49.) The voluminous studies that he cites were conducted from as long ago as 1999 up to as recently as 2012. (*See id.* ¶¶ 28–49.) According to Plaintiff, these studies conclude, for example, that "glucosamine hydrochloride performed no better than placebo at reducing pain," and "adult cartilage cannot be regenerated." (*Id.*) These allegations provide enough facts to give Defendants notice of the time, place, and nature of the alleged misconduct, satisfying Rule 9(b). *See Vess*, 317 F.3d at 1106.

The Court notes that Defendants present their argument—that facts alleged as to only Arthur Middleton do not satisfy Rule 9(b)—for the first time in their reply. However, "[t]he district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). "This principle is particularly important because arguments presented for the first time in a reply brief deprive the opposing party of an opportunity to address those arguments." *Gopar v. Nationstar Mortg., LLC*, No. 13-cv-2292, 2014 WL 1600324, at *4 (S.D. Cal. Apr. 17, 2014) (Whelan, J.). Based on the aforementioned principle, the Court need not consider Defendants' argument raised for the first time in their reply brief. But even if the Court does, Defendants' argument presumes that Arthur Middleton is not

PatentHEALTH's alter ego. As discussed earlier, Defendants have not met their burden thus far in their motion to demonstrate that they are not alter egos of each other. Because the argument is based on an incomplete premise, the Court rejects Defendants' contention that the allegations of fraud and misrepresentation against Arthur Middleton do not adequately satisfy Rule 9(b).

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Defendants' motion to dismiss. (Doc. No. 41.)

**IT IS SO ORDERED.**

**DATED:  May 22, 2014**

*Cynthia Bashant*
**Hon. Cynthia Bashant**
**United States District Judge**