1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

DRAGAN VASIC, On Behalf of
Himself and All Others Similarly
Situated,

Plaintiff,

v.

PATENTHEALTH, L.L.C., *et al.*,

Defendants.

Case No. 13-cv-849-BAS(MDD)

**ORDER DENYING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

**[ECF No. 70]**

20

21

22

23

24

        On April 8, 2013, Plaintiff Dragan Vasic commenced this class action arising out of the advertising and sale of a glucosamine-based health supplement.  On April 8, 2014, Plaintiff filed a Second Amended Complaint ("SAC") against Patent Health, LLC and Arthur Middleton (collectively, "Defendants").  (ECF No. 40.) Defendants now move for summary judgment.  Plaintiff opposes.

25

26

27

28

        The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L. R. 7.1 (d)(1).  For the following reasons, the Court **DENIES** Defendants' motion for summary judgment. (ECF No. 70.)

1    **I.    BACKGROUND[1]**

2    Between February 2006 and October 18, 2013, Defendants marketed and

3    distributed Trigosamine Maximum Strength ("Trigo MS").  (JSUF 1.)  Trigo MS

4    contains Hyaluronic Acid, Glucosamine, Chondroitin Sulfate, and Vitamin D.

5    (JUSF 7.)  Between December 2008 and October 18, 2013, Defendants marketed

6    and distributed Trigosamine Fast Acting ("Trigo FA").  (JSUF 2.)  Trigo FA

7    contains Hyaluronic Acid, Glucosamine and a proprietary blend of ingredients

8    called RapidFLEX, which includes Boswellia gum resin extract, Curcuma Longa

9    extract, and a standardized extract of black pepper.  (JSUF 5.)  Plaintiff and

10   Defendants disagree about which of the ingredients in Trigo MS and Trigo FA

11   (collectively, the "Products") are active.  (JSUF 4-7.)  Defendants offered an

12   unconditional 90-day money back guarantee that "any unused portion of the

13   Products could be returned for a full refund of the product price if the purchaser

14   was not satisfied with his or her results." (JSUF 18.)

15   In connection with their Products, Defendants advertise that Glucosamin

16   "helps build and maintain healthy, protective cartilage and joints and reduces joint

17   discomfort," and Chondoitrin Sulfate "promotes joint flexibility, lubrication,

18   comfort, and range of motion."  (Wallace Decl. Exs. A & B, ECF Mo. 70-3.)  In or

19   around November 2012, Plaintiff saw Defendants' representations of the joint-

20   related health benefits of Trigo MS when he read the product label in a Walgreen

21   store near his home in San Diego, CA.  (SAC ¶ 13.)  Based on the claims of the

22   product label, specifically that Trigo MS would "'lubricate' joints, 'relieve' pain,

23   and 'build' cartilage," Plaintiff purchased Trigo MS for approximately $25.  (*Id.*)

24   Plaintiff claims that Trigo MS did not provide him the benefits stated on the

25   product label, and had he "known the truth about Defendants' misrepresentations

26   and omissions, he would not have purchased Trigo MS. (*Id.*)

27   _____

28   [1] Unless otherwise noted, the parties do not dispute the relevant facts.  Facts not in dispute are included in the Joint Statement of Undisputed Facts ("JSUF").  (ECF No. 84.)

1      To support his claim that these statements are false and misleading, Plaintiff

2  provides over twenty studies demonstrating that neither Glucosamine nor

3  Chondroitin Sulfate regenerate cartilage or provide joint comfort or relief from

4  pain. (SAC ¶¶ 28-49.) These studies can be broken down into several categories:

5  (1) studies regarding the effect of Glucosamine, alone, or in combination with

6  Chondroitin Sulfate, in the treatment of osteoarthritis (*id.* ¶¶ 28, 30-38, 43, 45, 47);

7  (2) studies regarding the effect of Glucosamine, alone, or in combination with

8  Chondroitin Sulfate, on the restoration or regeneration of cartilage or a reduced rate

9  of cartilage degeneration (*id.* ¶¶ 29, 33, 39-41); (3) studies regarding the effect of

10  Glucosamine, alone, or in combination with Chondroitin Sulfate, in the

11  maintenance of joints (*id.* ¶¶ 42, 48); (4) studies regarding the effect of

12  Glucosamine on chronic low back pain (*id.* ¶ 44); and (5) a study concluding that

13  "regardless of the formulation used, no marginal beneficial effects were observed as

14  a result of low Glucosamine bioavailability" (*id.* ¶ 46).

15      In his SAC, Plaintiff acknowledges there are two studies "purporting to claim

16  that the ingestion of Glucosamine can affect the growth or deterioration of

17  cartilage," but attempts to discredit them on the basis that they were both sponsored

18  by a Glucosamine supplement manufacturer and the methodologies used had

19  "inherently poor reproducibility." (SAC ¶ 49.) Plaintiff, therefore, contends that

20  these two studies are unreliable. (*Id.*)

21      Plaintiff also provides an expert report by Dr. Silbert ("Silbert Report") to

22  support his claims. (ECF No. 75-1.) Dr. Silbert found it impossible for the

23  "ingestion of either" Glucosamine or Chondroitin Sulfate in isolation, together, or

24  with the ingredients found in the Products to have "any effect on cartilage or to

25  contribute in any way to control [] osteoarthritis or its symptoms." (Silbert Report

26  ¶ 9.) Dr. Silbert found that Glucosamine and Chondroitin Sulfate reach the joints in

27  "only minuscule amounts" and have "no positive building effects." (*Id.* ¶ 38.) He

28  also found that the "small amounts" of hyaluronate that "might get" to the joints

1    and cartilage "preclude any possibility of building cartilage."  (*Id.*)  Although Dr.

2    Silbert noted the vitamin D is a "necessary component of bone and other tissues and

3    could be of value if there were a deficiency," he also reported that vitamin D has

4    "no effect on cartilage."  (*Id.*)

5         On April 8, 2013, Plaintiff commenced this class action seeking an

6    injunction, restitution and disgorgement under the CLRA.  (Compl. ¶ 66.)  In the

7    Complaint, Plaintiff added that if Defendants "fail[ed] to rectify or agree to rectify

8    the problems associated with the actions detailed above . . . within 30 days of the

9    date of written notice pursuant to §1782 of the Act, Plaintiff will amend the

10   Complaint to add claims for actual, punitive and statutory damages as appropriate."

11   (*Id.* ¶ 68.)  Simultaneously with the Complaint, Plaintiff provided written notice,

12   via certified mail, to Defendants pursuant to California Civil Code section 1782.

13   (JSUF 31.)

14        Thereafter, Plaintiff amended the Complaint, adding allegations that it had

15   notified Defendants pursuant to §1782, by certified mail, and that Defendants had

16   failed to agree to rectify the problems.  Plaintiff added claims for actual, punitive

17   and statutory damages.  (First Amended Complaint ("FAC") ¶ 73, ECF No. 4.)

18   Plaintiff has since amended the Complaint again.  The SAC asserts claims for a

19   violation of the CLRA, California Civil Code §§ 1750, *et seq.*, and a violation of

20   the California Business and Professions Code §§ 1720, *et seq.*

21

22   **II.    LEGAL STANDARD**

23        Summary judgment is appropriate under Rule 56(c) where the moving party

24   demonstrates the absence of a genuine issue of material fact and entitlement to

25   judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

26   477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive

27   law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477

28   U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is

1   such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at

2   248.

3       A party seeking summary judgment always bears the initial burden of

4   establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at

5   323. The moving party can satisfy this burden in two ways: (1) by presenting

6   evidence that negates an essential element of the nonmoving party's case; or (2) by

7   demonstrating that the nonmoving party failed to make a showing sufficient to

8   establish an element essential to that party's case on which that party will bear the

9   burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary

10  facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac.*

11  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

12      "The district court may limit its review to the documents submitted for the

13  purpose of summary judgment and those parts of the record specifically referenced

14  therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th

15  Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a

16  genuine issue of triable fact. *Kennan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996)

17  (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If

18  the moving party fails to discharge this initial burden, summary judgment must be

19  denied and the court need not consider the nonmoving party's evidence. *Adickes v.*

20  *S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

21      If the moving party meets this initial burden, the nonmoving party cannot

22  defeat summary judgment merely by demonstrating "that there is some

23  metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd.*

24  *V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D*

25  *Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of

26  evidence in support of the nonmoving party's position is not sufficient.") (citing

27  *Anderson*, 477 U.S. at 252). Rather, the nonmoving party must "go beyond the

28  pleadings and by 'the depositions, answers to interrogatories, and admissions on

1    file,' designate 'specific facts showing that there is a genuine issue for trial.'"

2    *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

3         When making this determination, the court must view all inferences drawn

4    from the underlying facts in the light most favorable to the nonmoving party.  *See*

5    *Matsushita*, 475 U.S. at 587.  "Credibility determinations, the weighing of

6    evidence, and the drawing of legitimate inferences from the facts are jury functions,

7    not those of a judge, [when] he [or she] is ruling on a motion for summary

8    judgment." *Anderson*, 477 U.S. at 255.

9

10   **III.   DISCUSSION**

11         Defendants move for summary judgment arguing: (1) Plaintiff cannot prove

12   the falsity of Defendant's advertising claims; (2) Plaintiff did not comply with the

13   notice standard of the CLRA; (3) Plaintiff cannot prove the California Unfair

14   Competition Law ("UCL"); and (4) Plaintiff lacks standing to bring these claims.

15   The Court addresses each issue below.

16

17         **A.   Falsity of PatentHealth's Advertising Claims**

18         Defendants move for summary judgment of Plaintiff's UCL and CLRA

19   claims on the basis that Plaintiff cannot plausibly prove that the statements in

20   Defendants' advertising are false.  (Defs.' Mot. 15-16.)  Relying on *Murray v.*

21   *Elations Co., LLC*, No. 13-cv-2347-BAS(WVG), 2014 U.S. Dist. LEXIS 107721

22   (S.D. Cal. Aug. 4, 2014), Defendants argue that Plaintiff fails to provide any

23   evidence of scientific studies that test Defendants' actual Products and fails to link

24   any studies concerning osteoarthritis to Defendants' actual representations.  (Defs.'

25   Mot. 17-20.)

26         In *Murray*, the plaintiffs alleged the defendant had represented that its

27   product would make joints healthier.  To show this was untrue, the plaintiffs

28   showed studies that showed Glucosamine was not effective in treating

1  osteoarthritis.  Relying on a series of similar cases, this Court concluded that was

2  insufficient.  First, Elations never represented that its product was effective in

3  treating osteoarthritis, and, second Elations never made any representations about

4  Glucosamine, it made only representations about its product which contained

5  Glucosamine.  *Id.*; *see also McCrary v. Elations Co., LLC*, 2013 WL 6402217

6  (C.D. Cal. Apr. 24, 2013); *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218

7  (S.D. Cal. Nov. 1, 2012); *Otto v. Abbott Labs. Inc.*, 2013 U.S. Dist. LEXIS 53287

8  (C.D. Cal. Mar, 15, 2013).  This case is easily distinguishable.

9       First, in this case, Defendants specifically represented that Glucosamine

10  "helps build and maintain health protective cartilage and joints, and reduces joint

11  discomfort."  (Wallace Decl. Exs. A & B.)  Second, and more importantly, Plaintiff

12  provides studies in this case that look at the effect of Glucasamine and conclude

13  that it does not "relieve joint discomfort," "lubricate joints," and/or "build

14  cartilage."  (SAC ¶¶ 29, 33, 39-42, 46, 48.)  Additionally, Plaintiff's claims are

15  bolstered by expert witness Dr. Silber, who will testify that it is impossible for the

16  "ingestion of either" Glucosamine or Chondroitin Sulfate in isolation, together, or

17  with the ingredients found in the Products to have "any effect on cartilage or to

18  contribute in any way to control [] osteoarthritis . . . symptoms."  (Silbert Report ¶

19  9.)  Dr. Silbert found that Glucosamine and Chondroitin Sulfate reach the joints in

20  "only minuscule amounts" and have "no positive building effects."  (*Id.* at ¶ 38.)

21  He also found that the "small amounts" of hyaluronate that "might get" to the joints

22  and cartilage "preclude any possibility of building cartilage."  (*Id.*)  Although Dr.

23  Silbert noted the vitamin D is a "necessary component of bone and other tissues and

24  could be of value if there were a deficiency," he also reported that vitamin D has

25  "no effect on cartilage."  (*Id.*)

26       Credibility determinations and the weighing of evidence are jury functions,

27  and are not for the Court to determine on a motion for summary judgment.  *See*

28  *Anderson*, 477 U.S. at 255.  The Court finds that Plaintiff has produced evidence

1   that, when viewed in the light most favorably to Plaintiff as the nonmoving party,

2   sufficiently demonstrates that Glucosamine and Chondroitin sulfate are incapable of

3   the effects advertised by Defendants such that there is a genuine issue of material

4   fact.   Therefore, Defendants' Motion for Summary Judgment on this ground is

5   **DENIED**.

6

7        **B.    Notice Under the CLRA**

8        Under California Civil Code § 1782(a), a plaintiff must provide notice to the

9   person alleged to have violated the CLRA at least thirty days before commencing

10  an action for damages pursuant to the CLRA.   This notice must include a demand

11  that the person correct the goods alleged to violate the CLRA.   Cal. Civ. Code §

12  1782(a)(2).   Alternatively, a plaintiff may file suit for injunctive relief without

13  notice, give notice of intent to amend the complaint to add a claim for damages, and

14  then amend the complaint thirty days after notice, if the defendant has not agreed to

15  rectify the violations.   Cal. Civ. Code § 1782(d).

16       Relying on *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal.

17  2007), Defendants move for summary judgment on the CLRA claim for failing to

18  give notice pursuant to § 1782.   Putting aside for the moment the issue of whether

19  this is more appropriate for a motion to dismiss than a motion for summary

20  judgment, the Court notes that Plaintiff's original complaint sought preliminary and

21  permanent injunctive relief pursuant to the CLRA and indicated that if Defendants

22  failed to rectify the problems, Plaintiff would be amending to add claims for actual,

23  punitive and statutory damages, as appropriate.   (Compl. ¶¶ 60, 68.)   Although

24  Plaintiff sought restitution and disgorgement in the original Complaint, these do not

25  appear to be "damages" for purposes of the CLRA.   *See In re Mattel*, 588 F. Supp.

26  2d 1111, 1119 (C.D. Cal. 2008) (Since the CLRA allows "actual damages,"

27  "punitive damages," and "restitution," restitution and disgorgement do not appear

28  to be "damages" for purpose of section 1782).

1    The Court finds Plaintiff complied with California Civil Code § 1782(d), and

2    Defendants' Motion for Summary Judgment for lack of notice is **DENIED**.

3

4    **C.    UCL Claim**

5    Defendants argue Plaintiff cannot prove his UCL claim because: (1) he

6    cannot prove damages because Defendant offered an unconditional 90-day money-

7    back guarantee; (2) the class is not ascertainable as a matter of law because of

8    Defendant's money-back guarantee; and (3) Plaintiff cannot prove any prong of the

9    UCL.

10

11    **1.    Damages and the Money-Back Guarantee**

12    A UCL action is equitable in nature, and damages cannot be recovered.

13    *Korea Supply Co., v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  A

14    private plaintiff, however, may sue for injunctive relief and restitution.  *Stearns v.*

15    *Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1151 (N.D. Cal. 2010).  An

16    order for restitution is one compelling a UCL defendant to return the money

17    obtained through the unfair business practice.  *Korea Supply*, 29 Cal. 4th at 1144.

18    A private plaintiff must prove, therefore, that it has suffered an injury-in-fact.  *Id.*

19    Thus, in *Stearns*, the court found the named plaintiffs who had received a refund for

20    their purchases did not have grounds to seek restitution.

21    Relying on *Stearns*, Defendants contend that Plaintiff cannot prove damages

22    because PatentHealth offers a 90-day satisfaction guarantee ("Guarantee").   In

23    *Stearns*, all but one of the named plaintiffs had already received some sort of refund

24    from the defendant company prior to litigation.  *Id.* at 1135-37.  The court found the

25    plaintiffs who had received refunds suffered no damage, but the remaining plaintiff

26    did.  *Id.* at 1141.

27    In this case, when Defendants marketed and distributed the Products, they

28    offered an unconditional, 90-day satisfaction Guarantee that any unused portion of

1    the Products could be returned for a full refund of the Products' price, less shipping,

2    if a person was not satisfied with the results.  (Wallace Decl. Ex. E.)  However,

3    both parties acknowledge that the 90-day period has long since expired, and

4    Plaintiff did not receive a refund for his purchase of Trigo MS.  (Defs.' Mot. 12;

5    Pl.'s Opp'n 12.)  Therefore, this case is easily distinguishable from *Stearns*.  *See*

6    *also Diaz v. First Am. Home Buyers*, 732 F.3d 948 (9th Cir, 2013) (offer of

7    judgment that would fully satisfy plaintiff's claim does not render plaintiff's claim

8    moot because the settlement offer had long since expired).

9

10                    **2.      Ascertainable Class**

11          Defendants also rely on *Stearns* arguing that Plaintiff's proposed class is not

12    ascertainable because some of the members of the class may have received a

13    refund.     (Defs.' Mot. 15.)   In *Stearns*, the proposed class consisted of all

14    individuals who had "used and/or purchased" the product.  *Stearns*, 763 F. Supp. 2d

15    at 1152.  The court found the class unascertainable because individuals who used

16    but did not purchase the product could not demonstrate injury.  *Id.*   Additionally,

17    the court agreed that failing to exclude individuals who received a refund or

18    replacement product made the class unascertainable.  *Id.*

19          Here, Plaintiff's proposed class consists of "[a]ll individuals in California

20    who . . . purchased the [Products]."  (SAC ¶ 56.)  The proposed class is not as broad

21    as that in *Stearns* because it does not include individuals who merely used, but did

22    not purchase, the Products.   However, the proposed class does not exclude

23    individuals who received a refund.  Thus, the proposed class may be overbroad.

24    *See Stearns*, 763 F. Supp. 2d at 1152; *Aglarin v. Maybelline, LLC*, 300 F.R.D. 444,

25    455 (S.D. Cal. 2014).  That said, "an over-inclusive class definition need not defeat

26    certification entirely" because the court has the discretion to narrow an overbroad

27    class to fit within the boundaries of Federal Rule of Civil Procedure 23.  *In re*

28    *NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1093 (C.D. Cal.,

2015) (quoting *Nat'l Fed. of the Blind v. Target Corp.*, No. CV 06-01802 MHP, 2007 WL 1223755, at *3 (N.D. Cal. Apr. 25, 2007)).  It may well be that the Court will need to narrow the class definition when class certification is sought. However, since there is currently no class-certification motion pending, the issue is not ripe.

### 3.      Three Prongs of the UCL

California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, prohibits business acts or practices that are "unlawful," "unfair," or "fraudulent."  *Id.* §17200.  Each of these three prongs constitutes a separate and independent cause of action.  See *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) (citations omitted).

### a.      Unlawful Prong

The UCL's "unlawful" prong is essentially an incorporate-by-reference provision.  *See Cel-Tech*, 20 Cal. 4th at 180 ("By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." (citations and some internal quotation marks omitted)).  "Violation of almost any federal, state, or local law may serve as the basis for a[n] [unfair competition] claim." *Plaxcencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (citing *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994)).  "When a statutory claim fails, a derivative UCL claim also fails." *Aleksick v. 7-Eleven*, 205 Cal. App. 4th 1176, 1185 (2012).  Because Plaintiff can plausibly claim that the CLRA was violated, summary judgment on this prong must be **DENIED**.

### b.      Unfair Prong

Under the UCL, the California Supreme Court defined the word "unfair" to

1    means conduct that "threatens an incipient violation of an antitrust law, or violates

2    the policy or spirit of one of those laws because its effects are comparable to or the

3    same as a violation of the law, or otherwise significantly threatens or harms

4    competition." *Cel-Tech*, 20 Cal. 4th at 187. Thus, a plaintiff must show that the

5    defendant's conduct violated the spirit of antitrust laws, "such as horizontal price

6    fixing, exclusive dealing, or monopolization." *Celebrity Chefs Tour, LLC v.*

7    *Macy's Inc.*, 16 F. Supp. 3d 1123, 1140 (S.D. Cal. 2014).

8            Since the issuance of *Cel-Tech*, lower courts have struggled to apply this rule

9    and to define the "unfair" prong in the context of consumer cases. *Backus v.*

10   *General Mills*, 122 F. Supp. 3d 909 (N.D. Cal. 2015). Although the courts are

11   directed not to apply their own purely subjective notions of unfairness, the

12   definition remains elusive. Some have applied a "balancing test" requiring a

13   Plaintiff to show "that the harm to the public from the business practice is greater

14   than the utility of the practice." *Id.* (citing *Rubio v. Capital One Bank*, 613 F.3d

15   1195, 1205 (9th Cir. 2010)). Others have applied a "public policy test," requiring a

16   plaintiff to show that the business practice "violates public policy as declared by

17   specific constitutional, statutory or regulatory provisions." *Id.*

18           Defendants urge this court to apply "the FTC test" as laid out in *Camacho v.*

19   *Automobile Club of Southern California*, 142 Cal. App. 4th 1394 (2006). (Defs.'

20   Mot. 14.) In *Camacho*, the appellate court adopted a three-prong standard,

21   requiring plaintiffs to show that: (1) the consumer injury was substantial, (2) the

22   injury was not outweighed by a countervailing benefits to consumers or

23   competitions, and (3) the injury must not be one that the consumers could

24   reasonably have avoided. *Id.* at 1403. Defendants argue Plaintiff cannot

25   demonstrate his injury is either substantial, nor, since there was a 90-day money

26   back guarantee, can Plaintiff show the injury was one consumers could not

27   reasonably avoid. (Defs.' Mot. 14.) However, "the Ninth Circuit has rejected the

28   use of the FTC test in the consumer context" because it focuses on "anti-consumer

1    conduct" as opposed to "anti-competitive conduct."  *Backus*, 122 F. Supp 3d 909

2    (citing *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 736 (9th Cir. 2007)).

3    Ultimately, the question of whether the harm from the business practice is greater

4    than the utility of the practice or the practice violates public policy in this case is a

5    jury question.   Therefore, Defendants' Motion for Summary Judgment on this

6    ground is **DENIED**.

7

8                          **c.       Fraudulent Prong**

9         To state a claim under the UCL's "fraudulent" prong, Plaintiff must prove

10   that Defendants' allegedly fraudulent business practice is one in which "members

11   of the public are likely to be deceived."  *Schnall v. Hertz Corp.*, 78 Cal. App. 4th

12   1144, 1167 (2000).    "Unless the challenged conduct targets a particular

13   disadvantaged or vulnerable group, it is judged by the effect it would have on a

14   reasonable consumer."  *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App.

15   4th 638, 645 (2008) (quotations omitted).  "Reduced to the elements, Plaintiffs

16   must [show] with specificity that Defendant's alleged misrepresentations: (1) were

17   relied upon by the named Plaintiffs; (2) were material; (3) influenced the named

18   Plaintiffs' decision to purchase the product [or enter into the agreement]; and (4)

19   were likely to deceive members of the public."  *Yastrab v. Apple, Inc.*, No. 14-cv-

20   1974-EJD, 2015 U.S. Dist. LEXIS 37119, at *19 (N.D. Cal. Mar, 23, 2015)

21   (quotations omitted).

22        Defendants argue the fact that they offer a 90 day money back guarantee

23   suggests to consumers that the product may not work for all consumers.  (Defs.'

24   Mot. 14-15.)  This Court disagrees.  In connection with their Products, Defendants

25   advertise that Glucosamin "helps build and maintain healthy, protective cartilage

26   and joints and reduces joint discomfort," and Chondoitrin Sulfate "promotes joint

27   flexibility, lubrication, comfort, and range of motion."  (Wallace Decl. Exs. A &

28   B.)  Plaintiff presents evidence that these statements are not true and that, had he

1    known these statements were not true, he would not have purchased the product.

2    This evidence is sufficient to put the issue before a jury.  Hence summary judgment

3    on this prong of the UCL is **DENIED**.

4

5        **D.    Standing to Bring Causes of Action**

6        Defendants argue Plaintiff lacks standing because (1) Plaintiff only relied on

7    claims on the label of Trigo-MS, therefore has no standing to assert claims

8    involving Trigo-FA; and (2) Plaintiff is, in fact, asserting "lack of substantiation"

9    claims, which cannot be brought by private plaintiffs.

10

11        **1.    Standing to Assert Trigo-FA Claims**

12        Defendants assert that Plaintiff lacks standing to bring a UCL or CLRA claim

13   based on Trigo-FA because Plaintiff never purchased the product or read the label.

14   (Defs.' Mot. 16-17.)  This same argument was already rejected when the Court

15   denied Defendants' motion to dismiss the FAC.  (ECF No. 39.)  The Court found

16   that Trigo FA and Trigo MS were "substantially similar" because they share the

17   same primary active ingredients.  (*Id.*)

18        Defendants argue once again that the Products are substantially different

19   because they have only two out of four or five ingredients in common.  (Defs.' Mot.

20   16.)  Courts have found that products with varying ingredients can nonetheless be

21   substantially similar when the same wrongful conduct is attributable to both

22   products.  *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-2910 EMC,

23   C-11-3164 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012); *Anderson v.*

24   *Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).  Here, the Products

25   are similar in appearance and contain the same representations concerning

26   Glucosamine and Hyaluronic Acid.  Hence, Defendants' Motion for Summary

27   Judgment on this ground is **DENIED**.

28

## 2. "Lack of Substantiation"

Private individuals may not bring an action demanding substantiation for advertising claims. Instead, only prosecuting authorities may require an advertiser to substantiate its advertising claims. Cal. Bus. & Prof. Code § 17508; *Nat'l Council Against Health Fraud, Inc., v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1345 (2003). Prohibiting private individuals from bringing lack of substantiation claims under the UCL "prevent[s] undue harassment of advertisers" and provides the "least burdensome method of obtaining substantiation for advertising claims." *Id.*

As discussed above, Plaintiff provides sufficient evidence to create a general issue of material fact as to the falsity of Defendants' advertising representations. Hence, Plaintiff is asserting false claims and not "lack of substantiation" claims. Defendants' Motion for Summary judgment is **DENIED** on this ground.

## IV. CONCLUSION & ORDER

In light of the foregoing, Defendants' Motion for Summary Judgment is **DENIED**. (ECF No. 70.) As ordered previously, the parties are ordered to contact the chambers of the assigned Magistrate Judge within three days of this order to set new dates regulating pretrial proceedings.

**IT IS SO ORDERED.**

DATED: **March 22, 2016**

Hon. Cynthia Bashant
United States District Judge